Ackerman *v.* Shelp.

---

ABRAHAM ACKERMAN *v.* LEVI SHELP.

IN TRESPASS QUARE.

*Clausum fregit.*

1. Where a defendant, together with the general issue, gives notice of special matter under the statute [*Rev. Laws* 404, *Sec* 2] the notice should contain only such matter, as if pleaded, would be a bar to the action.

2. A widow before the assignment of her dower has, under our statute, [*Rev. Laws* 397, *Sec.* 2] a freehold for *life* in the messuage or plantation of her deceased husband, unless sooner defeated by the act of the heir; and therefore, a notice justifying the entry, &c., upon the locus in quo by the command of the widow is good.

3. A notice, stating that the defendant entered upon the locus in quo by the *command, authority, license or permission* of J. W. is bad, for uncertainty.

4. A notice which alleges a *custom* in the inhabitants of a town, for all

persons to do certain acts on a prescription in a que estate is bad, for that part of the common law relating to rights accruing by custom and prescription has not been practiced or adopted in this State.

---

This was an action of trespass brought by Ackerman against Shelp for entering his close and pulling down and removing his fence.

The defendant pleaded the general issue, and gave notice with it of the special matter which he intended to offer in evidence. The notices were in substance as follows:

1. That the locus in quo was a strip of land lying on the bank of the Passaic river, near the public bridge over said river at the town of Aquackanunck, in the county of Essex, and is bounded on the west by lands of John Van Wagoner, and on the north adjoins lands not inclosed, but which for time immemorial has been used by all the inhabitants of the said county as a public highway or landing place, and that the said close in the lifetime of Rulif Van Wagoner and at the time of his death was the close, soil and freehold of the said Rulif, and that he died seized and possessed thereof, leaving his wife Sarah him surviving; that the said Sarah was lawfully entitled to dower in and out of the estate of her said deceased husband; that at the same time when, &c., the dower of the said Sarah had not been assigned or set off to her by the heir-at-law of the said Rulif. That the said close was at the time of the death of the said Rulif, and still is, a part of the messuage or plantation belonging to the mansion house of the said Rulif, and whereof he died seized, and that the said Sarah now is, and at the time when, &c., was as such widow of the said Rulif lawfully seized and possessed of the said close as a part of the mansion house, messuage and plantation whereof the said Rulif died seized, as aforesaid, and that the defendant as the servant of the said Sarah, and by her command, entered the said close and removed the fence, &c.

2. That the locus in quo is the soil and freehold of John

Van Wagoner and that as his servant, and by his command or by his authority, license or permission the said defendant entered, &c.

3. That the locus in quo was a common and public highway, and the defendant could not pass without removing the fence, or some part thereof, and to remove the obstacles pulled down the said fence.

4. That there is, and from time whereof the memory of man runneth not to the contrary, hath been a laudable custom used and approved of by all the inhabitants of the town of Aquackanunk to pass and repass into and over the said close to the said Passaic river to water.

5. That the locus in quo was a highway and the fence across it a nuisance, &c.

6. That there was, and from time immemorial had been, a custom for all persons taking lumber to Aquackanunk for market, to store it on the locus in quo until it should be carried aboard of vessels for transportation to market.

7. That John Van Wagoner is seized in his demesne as of fee of, and in a certain messuage with the appurtenances adjoining the said close, and that the said John and all those whose estate he hath, from the time whereof the memory of man runneth not to the contrary, have been used and accustomed to have a right of way over and upon the said close, for himself and his tenants and cattle, &c., and that the defendant is tenant of the said messuage with the appurtenances, &c.

There was also another action between the same parties for a trespass upon the same premises to which the defendant had pleaded the general issue and given notices. The second and fifth notices in this second action were the same in substance as the 6th and 7th notices above stated.

*Van Arsdale* for the plaintiff now moved the court to strike out these notices for the reasons assigned.

1st Notice. He objected to this notice because it did not go to bar the plaintiff's action, for admitting a right of way

over lands adjoining the locus in quo, it does not follow that the lands in question are held by the same title or subject to the same easements. Customs in one manor are no proof of customs in another manor, *Phil. Evi.* 182 (*old edit.* 130) 1 *Stra.* 661.

The title or easement to these adjoining lands is not in question, and if it was, it is uncertain whether the defendant will prove a highway or landing place. Besides, the defendant states the title to each of those lands to be by prescription; and no such right or title can exist in this State. As to that part of the notice which states a justification by the command or the order of Rulif Van Wagoner, the widow has not such an estate as the defendant can justify under, for the soil belongs to the heir until dower is assigned. Suppose the heir sue the widow in trespass, she could not plead *liberum tenementum ;* she has therefore no such estate as will authorize this notice.

2d. The second notice is vicious for uncertainty. It states that the defendant entered by the *command* or by the *authority, licence* or *permission* of John Van Wagoner. It was sufficient to make use of the word *command ;* the other words authority, licence or permission are superfluous and illegal. A licence can only be pleadad from the plaintiff, and a permission is the same as a licence, only more loose and uncertain. *Phil. Evi.* 179, *note* 3, 2 *Slack Re.* 71, 1 *Chitty Ple.* 495, 2 *ib.* 560.

3d. The third notice is also objectionable for uncertainty, it states "that the defendant could not pass without removing the fence or *some part thereof,*" the latter words "*or some part thereof,*" ought to be struck out. It is also double and therefore objectionable.

4th. The fourth notice is bad, because it sets up a custom in the inhabitants to pass and repass; and there is no such thing as a right or title acquired by custom in New Jersey; a custom to be good must have been commenced prior to the time of Richard the first, who began to reign in the year

1189. 2 *Jac. Law Dir.* 1722, 2 *Bl. Com.* 263, *ib.* 31 *note* 3 *Tucker's Bl.* 31 *note.*

A custom to take a profit in another's soil is bad, 4 *T. R.* 717, *Story Plead.* 579, so a custom to erect a fishing hut is bad, 2 *John Re.* 361, 6 *Co. Re.* 60, 3 *T. R.* 253, *Saville* 11, *Inhabitants* cannot prescribe to have a right of common. Customs must in their nature be confined to individuals; what is common to all mankind cannot be so claimed, 1 *Cro. Eliz.* 398, 2 *Jac. Dic.* 332, title easement.

5th. The fifth notice states that the *locus in quo* is a public highway. This notice is defective and vicious, because it does not set forth what kind of way it was, whether a horse way or a cart way, *Stra.* 624, *Yelv.* 164, 1 *Freem.* 53, *Style. Re.* 108, *King* v. *Spiller.*

6th. Notice is in substance the same as the fourth, it sets up a custom and is therefore bad.

7th. The seventh notice is, that John Van Wagoner was seized in fee of a messuage adjoining the close, and entitled by prescription to a right of way over the *locus in quo*, to drive his cattle to water. There is no such thing as claiming a right by prescription in the State of New Jersey, 1 *Halsted Re.* 67, 2 *Bin. Re.* 490, 1 *Yeates Re.* 162, 1 *Co..Lit.* 115 *a.*

*Frelinghuysen and Hornblower, Contra.**

The opinion of the Court was delivered by

FORD, J.—To an action for entering the plaintiffs close and pulling down and removing his fence, the defendant pleaded the general issue and gave notice with it of the special matter which he intended to offer in evidence; which matter must be such according to the rule of the statute (*Rev. Laws,* 404, *sec.* 2) as "if pleaded would be a bar to the action." The plaintiff therefore moves to strike out so

*The arguments of these gentlemen on this case were mislaid after they had been placed in the hands of the compositor.

much of the first notice as alleges a right of high way over lands that are *adjoining* to the *locus in quo ;* and as no interest is claimed by the plaintiff or trespass assigned in those adjoining lands, and a right of way over them, supposing it to be conceded, would be no justification for an entry on the plaintiffs close, the matter appears to be foreign to the complaint and must be stricken out.

The remainder of this notice is to the following effect : that the close in question was the soil and freehold of one Rulif Van Wagoner who died seized ; that no assignment of dower in the estate had been made to Sarah his widow by the heir ; that therefore she held possession of the *locus in quo* as part of the plantation belonging to the mansion house of her husband at his death, and that the defendant entered and removed the fence as her servant by her command. The widow has a right by statute " to hold and enjoy the mansion house of her husband, and the messuage or plantation thereto belonging, until dower be assigned ;" (*Rev. Laws* 397, *sec.* 2) and the estate thus given to her is not a common law quarantine of forty days, but a freehold for life unless sooner defeated by an act of the heir. Now in what other way could her estate be pleaded than by shewing its commencement and the channel through which it is derived to her ? Had she pleaded *liberum tenementum* in the *heir* and a tenancy under him, she could not have made out her case because the heir had not assigned any lands for her dower. It is said that dower is a kind of subtenancy to the heir, and so it is ; but the *tenancy* is never *completed* till investiture or *assignment* (2 *Bl. Com.* 136.) It is true that the freehold is alleged to have been in a person who is deceased, and the name of the heir is not mentioned ; but I can perceive no use in mentioning the name of the heir when she does not hold by his assignment, but claims an estate under the statute, and has set out that estate sufficiently in the notice.

Another notice is to the following effect : that the free-

hold being in one John Van Wagoner, the defendant entered and removed the fence by his "*command, authority, license or permission.*" Now as these disjunctives would render any plea vicious for uncertainty they must vitiate a notice for the same reason. The substitution was not designed to allow a greater latitude of proof; the test of a good notice being that the matters therein contained can be specially pleaded; its privilege consists in an exemption from the forms and formalities of a plea, but it must contain all the *substance and certainty* of one as to the facts or. matters proposed to be given in evidence. Now possession is a good title for the plaintiff to hold against all the world but the right owner; and if it be conceded that John Van Wagoner is that right owner, still no *stranger* can set up the title for him without his command; therefore, command is the proper word, and the defendant must strike out "*authority, license or permission,*" or loose his notice; for if they mean the same thing as command they are superfluous and may be very embarrassing to the court and jury, and if they mean a different thing they are clearly illegal. I do not mean to say what evidence will or will not amount to a command; it must necessarily be left to the court and jury to determine on the sufficiency of it when it is produced at the trial.

The fourth notice alleges a *custom* in Aquackanunck for the inhabitants of the town to take their cattle over the *locus in quo* to water; the sixth alleges a *custom* for all persons taking lumber to Aquackanunck for market, to store it on the *locus in quo* till it shall be carried on board of vessels for transportation to market; and the seventh alleges a prescription in the que estate for a right of way to water over the *locus in quo.*

I will not consume much time in remarking that a right to *store lumber,* is a *profit* in another's soil that must be prescribed for in a que estate and cannot be claimed by custom; (6 *Co.* 59. *b.* 4 *Ter. Rep.* 718,) because I place my

objection to these three notices on another ground, which is that "so much of the common law" as respects rights accruing by custom and prescription has not been "heretofore practised" in New Jersey, (*Cons. of N. J., sec.* 22,) and these doctrines could not now be introduced without doubtful if not dangerous consequences. The country could not have progressed till this time without a single instance of a right being established on either of these grounds in our courts of justice, if these doctrines had been received here with the common law. "'Time of memory' hath been long ago ascertained by law to commence from the beginning of the reign of Richard the first, and any custom may be *destroyed* by evidence of its non-existence in any part of the long period from that time to the present," (2 *Bl. Com.* 31.) This is sufficient to destroy all common law customs in New Jersey, for the country was not discovered by civilized inhabitants, and civil rights could not consequently have been in use, till more than three hundred years after the beginning of the reign of Richard the first. In most towns standing on navigable water are many uninclosed water lots not applicable to agriculture nor wanted for commercial purposes as yet, over which the inhabitants have been never restrained from passing or driving their cattle to water; and if custom (which is a local law founded on universal usuage, and can no more be released than any other law) is to prevail according to the common law notion of it, these lots must lie open forever to the surprise of unsuspecting owners, and to the curtailing commerce, in its more advanced state, of the accomodation of docks and wharves, when per haps a tenth part of the lots now open would be all sufficient as watering places; a principle of such extensive operation ought not to be strained beyond the limits assigned to it in law. If public convenience requires high ways to church, school, mill, market or water, they are obtainable in a much more direct and rational manner under the statute than by way of immemorial usage and custom. I must not be under-

Ackerman *v.* Shelp.

stood to mean that the uninterrupted enjoyment of an easement in another person's soil for twenty or thirty years, or perhaps a less period of time, will not be evidence for a jury to presume a grant or dedication of such easement, after duly considering such explanations, reasons and opposing circumstances as the case may afford. Usage *beyond* time of legal memory and usage *within* memory depend on principles and evidence totally distinct from each other. If the defendant relies on usage for a *definite period of time* he ought to amend his notice so as to correspond with the evidence he means to offer; it can answer no purpose of justice or candor to give notice of one thing and prove another. I am of opinion therefore as to these three notices that the rights therein set up cannot be maintained in the *form* nor on the *principle* therein stated, and that they ought to be stricken out.

In a second action between the parties wherein the defendant sets up in his second notice a *custom* by immemorial usage, and in the fifth a *prescription* in the que estate I need only observe that they ought to be stricken out for the reasons before mentioned.